Good morning, Your Honor. May it please the Court, my name is Gary Singh. I represent the petitioner in this case. Your Honor, just for the record, my client, Mr. Durkin, has been released from prison. He's out and he's present in court today with his sister, his employer, and brother-in-law. They're present in court. A brief summary of this case, Your Honor. Mr. Durkin was born in Yugoslavia on November 13, 1970. At age four, after his mom passed away and he did not know whereabouts of his father, he lived in an orphanage, which was ran by the Serbs in Croatia. Mr. Durkin was able to come to the United States in 1981 through the assistance of his sister. And at a later time, his sister did adopt him and he was able to get his green card in 1989. In 2004, Mr. Durkin was convicted in the state of Hawaii for unlawful use of a controlled substance and possession of a firearm. And that's what brought him to the attention of the immigration folks. The real question, it seems to me, that you might want to help us with is, what is the evidence of future persecution? If he goes back to Croatia, what is there in the record that would indicate that he would be persecuted? Sure, Your Honor. Your Honor, usually I'm before this panel trying to argue that the immigration judge made an error in past cases. I'm here today submitting that the immigration judge did not make an error, did review the evidence, and made the correct decision. When we presented our case before the immigration judge, Judge Beamer, Mr. Durkin testified. His sister, Vesna, who had returned to Croatia twice and had personal experience of what she encountered, testified. Mr. Durkin's brother-in-law, who is a former police officer, retired now, who also did go to Croatia, testified. And a good friend of Mr. Durkin, who is from Croatia, also testified. And the judge also looked at the State Department report. Based on all of that, the judge made a decision that if Mr. Durkin returns to Croatia, he will likely be more likely than not be persecuted. Well, you're not arguing that the BIA disregarded the factual findings made by the IJ, are you? No, I'm not, Your Honor. Obviously, the BIA reached a different conclusion. Correct. The BIA did concur with the findings of the judge. They did not say otherwise. That is correct. Your Honor, so what is your legal argument to us at this point? Well, the legal argument that we are presenting here is BIA did not look at the evidence closely. They basically looked at the record and came back and decided that Mr. Durkin will not be persecuted if he returns. And we disagree with that. Counsel, what is the standard that the BIA is dealing with here? It looks like the BIA had a mixed finding of fact and law. Would you agree with that? Yes, Your Honor. And under those circumstances, what does the BIA have to find? Is it substantial evidence? Is it the noble review? What are they doing there? Judge, if you look at the statute, the statute requires that more likely than not, that if Mr. Durkin returns to Croatia, he will be persecuted. Then we go back and look at what was presented before the judge. I went before the judge seven times. So you're arguing that the standard, I assume you're arguing that the standard of review by the BIA is substantial evidence. That's all it looks at. Is that your contention? That is correct. Yes. And that's what they had before them in their record. They came back with a decision of one page, single space, basically saying the judge was wrong. And the judge's decision was 11 pages long. She looked at all the facts. She did look at what the witness testified to. She did find them all credible. Based on all that, the judge had firsthand information based on what was presented to her. What's our standard of review here? Let's assume for a moment that the standard for the BIA was substantial evidence. We're reviewing the BIA at this point. What is your contention that our standard of review is? Your Honor, we always have to go back and look at the statute. The statute requires you look at the evidence and then decide whether Mr. Durkin, more likely than not, will be persecuted. And when we were before the IJ, the immigration judge, we did prove that. And the immigration judge ---- I understand. But what my question is, are we looking at this de novo? Or are you contending that we, too, are looking at this on the basis of whether there is substantial evidence in the record before the immigration judge and we should make our decision on that basis? Is that your contention? That is correct, Your Honor. So it's not a de novo review from your perspective? Well, the bench can always look at it as a de novo review if they want to. But what we have here is what was presented to the immigration judge, and the board did not look at it. And furthermore, Your Honor, while this case was pending before the Ninth Circuit, Molina Camacho v. Ashcroft was set aside, so we will not be discussing that today. Unless the panel have any questions, I will reserve my time. You may reserve, Counsel. Thank you. We'll hear from the government. Good morning, Your Honors. May neither the Court nor Association Correspondent Peter Keisler. I'm afraid I must disagree with Mr. Singh on the standard of review. The judicial standard of review is substantial evidence must support the board's decision and a reversal is warranted only if another conclusion is compelled. Sorry. This is the board's decision we're looking at in this case. The board's decision on findings of fact is clear error, but the board agreed with the immigration judge's finding of fact. So the only their standard of review is de novo on the judgment. And the board was fully empowered to disagree with the conclusion of the immigration judge. It's not abuse of discretion. It's not clear error. It's de novo. On these facts, the board was fully justified to find that there was no well-founded fear of persecution. The past persecution is conceded, but it's – there's been a change of in-country conditions. Petitioner feared serves in an orphanage. The pro-ops are now in control, and he's not returning to an orphanage. And it's clear this is absolutely a sympathetic case, and that's why everyone bent over backwards to try and build a case for withholding here. But there is none. The family has been back, and there are – and the State Department supports a finding that there is discrimination, there is harassment from a country in transition that can't keep up with the flood of refugees, but it also states that they are welcoming returning pro-ops. There is no discrimination against those who didn't answer the call to fight the Serbs in 1995. And it's a hardship for him to return. However, he has rendered himself ineligible for asylum, which has a humanitarian aspect, by virtue of his conviction. You're claiming that the records substantiate what you just said? Yes, absolutely. There's no discrimination at all? Not against Americanized Croats returning. How could they even say such a thing? There's harassment, general harassment. Okay, petitioner is Catholic. The country is 85 percent Catholic. At one point, he said, I fear persecution as a Catholic because the Muslims are persecuting the Catholics. That's true, but the Catholics are also persecuting Muslims. We have that case in here, Vicknovic, where he wasn't found a persecutor because he was defending himself against Croats. So you can't say that a Croat is, I mean, when one side is persecuting the other, neither side can claim persecution or claim to be found a persecutor. There's an 11th Circuit case, Adefemi, I think is the way they say it, versus Ashcroft, that suggests that when we review the BIA's work in this, that we're looking to see whether the BIA provided substantial evidence for its position. Do you agree with that case? Well, yes, the standard of review is the substantial evidence support, but the standard reversal. And what substantial evidence did the BIA provide? Not the IJ, but the BIA. There is general discontent among people in Croatia. What's inside the country report? And the testimony. Okay. General discontent among people in Croatia due to ethnic tensions and a slow economy, but no clear probability that petitioner will suffer persecution on account of a protected ground. At the beginning of the hearing before he was applying, he said he did not fear returning to Croatia. He designated Croatia. The immigration judge and counsel conceded that there's no evidence of persons who didn't volunteer to fight against the Serbs returning and being persecuted or discriminated for that. And the State Department indicates that they are welcoming back expatriate Croats, even on an issue that bothered petitioner's sister, giving them priority to return confiscated land and property. And this case is truly a humanitarian case, but there is no humanitarian aspect to withholding. And petitioner, by virtue of his convictions, has rendered himself ineligible for a humanitarian grant of asylum. And it's regrettable, but it's strictly a statutory standard and not a discretionary one for withholding. So you take the position that the two-page order of the board dated April 4, 2005, contains substantial evidence to warrant what you have indicated to the court. Absolutely, Your Honor. How much more detail do they have to go into? They described the evidence. They summarized it. They've left nothing out. They've discussed the testimony. They found the testimony credible of all the witnesses, but found that this did not compel the conclusion that he, petitioner, would suffer persecution on account of his statutorily protected ground if he returned to Croatia. He will have a very hard time because he doesn't speak the language, but that's not protected. That would have been protected under asylum, but asylum is not available to people who commit drug and gun firearms offenses. And, in fact, this was not his first defense. This whole thing came about not only because of his recent convictions, but because of a prior crime in New York when he left the state without dealing with the criminal charges and when he went to apply for naturalization in 1995. This is all in the record, Your Honor. When he went to apply for naturalization in 1995, INS processed the application and said, oh, you have an outstanding warrant against you in New York. You have to take care of that before you can naturalize. He went back. He got a six-month probation from the New York State Court. And then he said, okay, I've done that. Now I can naturalize. And INS said, well, you've got to finish your probation before you can naturalize. And he said, okay, give me my money back and I'll come back next year. And they said, no, we've processed the application. Come back and give us a new application. And he testified, I got a no. I was offended, so I never went back and reapplied. Had he done that in 1997, as INS told him to do, he would not be and then later committed a drug trafficking and firearms offense. We would not be here today. So, I mean, this is not he's not a hapless victim here. He has taken steps that have put him in this position and rendered him ineligible for relief that the government can give him. Anything further, counsel? No, Your Honor. Thank you. Mr. Singh, you have a little bit of reserve time. Thank you, Your Honor. When Mr. Durkan was in prison waiting for the case to get to the Ninth Circuit, we were told by Homeland Security to get documents from Croatia that if we have documents, travel documents, they will release him. The sister tried to contact the embassy of Croatia. They will not cooperate. She flies to Croatia. She goes to the department where they issue birth certificates and citizenship for Croatia. His name was not on the list. When Mr. Durkan was born, Croatia was under the control of Yugoslavia. It's no longer there. So, if this court deports Mr. Durkan, he will get a travel document issued by the consulate of Croatia and when he gets to Croatia, it will be their decision whether to admit him into the country or not. That's one. Number two, Your Honor. When the judge decided this case, she did look at the State Department report. And in that, it shows that the police is corrupted. The police does not do proper investigations when they investigate their cases. There is serious abuse of people. So, we submit, Your Honor, that if Mr. Durkan is deported back to Croatia, as stated in our position, he will not survive. I have nothing further. Thank you, Counsel. The case just argued will be submitted for a decision.
judges: O'scannlain, Tashima, M. Smith